Robert L. Kraselnik (New York Bar No. 2916799)
*Admitted Pro Hac Vice*
LAW OFFICES OF
ROBERT L KRASELNIK, PLLC
261 Westchester Avenue
Tuckahoe, NY 10707
(646) 342-2019
robert@kraselnik.com
*Attorney for Plaintiff and the Proposed Class*


Jayson M. Lorenzo (Bar No. 216973)
*Local Counsel*
J. LORENZO LAW
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92008
(760) 560-2515
jmlorenzo.esq@gmail.com

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY CRAIG, on behalf of himself and all others similarly situated, | Case No. 3:22-cv-473-RSH (MSB) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | |
| AMERICAN TUNA, INC., and WORLD WISE FOODS, LTD., | District Judge:  Hon. Robert S. Huie<br>Magistrate Judge:  Hon. Michael S. Berg |
| Defendants. | PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |
| | Motion Date: September 11, 2023<br>Trial Date:  Not Yet Set |
| | **REDACTED FOR PUBLIC VIEW** |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 6

II.     FACTS ................................................................................................................. 7

III.    THE PROPOSED CLASS .................................................................................. 12

IV.     THE CLAIMS PLAINTIFF SEEKS TO CERTIFY ......................................... 12

V.      LEGAL STANDARD ........................................................................................ 13

VI.     ARGUMENT ..................................................................................................... 14

        A.      The Requirements of Rule 23(a) are Satisfied ..................................... 14

                1.      Numerosity .................................................................................. 14

                2.      Commonality ............................................................................... 15

                3.      Typicality .................................................................................... 16

                4.      Adequacy ..................................................................................... **17**

        B.      The Requirements of Rule 23(b) are Satisfied ..................................... 19

                1.      Common Issues Predominate ...................................................... 19

                        a.      The Predominance of Common Issues of Fact .................. 20

                        b.      The Predominance of Common Issues of Law ................. 21

                2.      Common Proof of Damages ........................................................ 22

                3.      Superiority ................................................................................... 25

        C.      The Class is Ascertainable ................................................................... 26

VI.     CONCLUSION .................................................................................................. 27

# TABLE OF AUTHORITIES

**Cases**

*In re Abbott Labs Norvir Antitrust Litig.*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899 (N.D. Cal. June 11, 2007). ......................................................................................................................... 15

*In re Amla Litig.*, 320 F. Supp.3d 578 (S.D.N.Y. 2018) ..................................................... 14

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). .................................................. 16, 20

*Barrack*, 524 F.2d 891 (9th Cir. 1975). .................................................................. 14

*Boule v. Hutton,* 328 F.3d 84 (2d Cir. 2003) .......................................................... 22

*In re Brazilian Blowout Litig.*, No. CV 10-8452-JFW MANX, 2011 WL 10962891 (C.D. Cal. Apr. 12, 2011)  18

*Briseno v. ConAgra Foods, Inc.*, 844 F. 3d 1121 (9th Cir. 2017)...................... 14, 25, 27

*Brown v. Hain Celestial Group, Inc.* No. 11-03082, 2014 U.S. Dist. LEXIS 162038 (N.D. Cal. Nov 18 2014). 23

*Chavez v Blue Sky Natural Beverages Co.*, 268 F.R.D. 365 (N.D. Cal 2010);................................. 16, 23

*In re ConAgra Foods Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. Feb 23, 2015) ........................... 25

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ........................................... 23, 24

*Cortez v. Purolator Air Filtration Products,* 23 Cal 4th 163 (2000) ........................ 24

*Culley v. Lincare Inc.,* 2016 WL 4208567 (E.D. Cal. Aug. 10, 2016). ........................ 27

*De La Fuente v. Stokely-Van Camp*, Inc., 713 F.2d 225 (7th Cir. 1983). ........................ 17

*Dei Rossi v. Whirlpool*, Case No. 12-cv-00125, 2015 U.S. Dist. LEXIS 55574 (E.D. Cal April 28, 2015). ....... 25

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ..................................... 27

*In re Diamond Foods Inc.*, 295 F.R.D. 240 (N.D. Cal 2013) ..................................... 24

*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011) ........................... 22

*Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014);. 27,28

*Gaidon v. Guardian Life Ins. Co.,* 94 N.Y.2d 330 (1999) ..................................... 22

*Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314 (2002) ............................... 22

*Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439 (E.D.N.Y. 2007)..................... 23

*Hale v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 4992504 (S.D. Ill. Sept. 16, 2016) ..................... 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)............................... 16-18, 20, 26

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992);.................................. 17, 18

*Harris v. Palm Springs Alpine Estates*, 329 F.2d 909 (9th Cir. 1964)................................................. 15

*Hofstetter v. Chase Home Fin.*, LLC, No. C10-01313 WHA, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011). .... 15

*In re High Tech Employees Antitrust Litig.*, 289 F.R.D. 555 (N.D. Cal 2013)................................. 24

*Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D. Cal. 2012).............................................................. 20

*Just Film v. Buono*, 847 F.3d 1121 (9th Cir. 2017) ................................................................ 25

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998................................................................... 16

*Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330 (N.D. Cal. 2010) ..................................... 15

*Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940 (2012)................................................. 22

*Kumar v. Salov North America Corp.,* 2016 U.S. Dist. LEXIS 92374 (N.D. Cal July 15, 2016); ..................... 25

*Kurtz v. Kimberly-Clark Corp., et al.,* 1:14-cv-01142 (E.D.N.Y. Feb. 21, 2014) ................................ 14

*Levva v Medline Industries, Inc.,* 716 F.3d 510 (9th Cir. 2013). ........................................ 23, 27

*Lilly v. Jamba Juice Co.*, 308 F.R.D. 231 (N.D. Cal. 2014) .......................................... 18, 23, 28

*Mass. Mutual Life Insurance Co. v. Superior Court,* 97 Cal. App. 4th 1282 (2002)........................... 21

*McCrary v. Elations Co.,* LLC, No. EDCV 13-00242 JGB OP, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) .. 28

*Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163 (S.D. Cal. May 12, 2016) ................................. 16

*Montera v. Premier Nutrition Corp.,* 2022 WL 3348573 (N.D. Cal. Aug. 12, 2022). ........................ 25

*Oden v. Boston Scientific Corporation,* 330 F. Supp. 3d 877 (EDNY 2018), *adhered to on reconsideration*, 2019 WL 1118052 (EDNY 2019) ................................................................... 23

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20 (N.Y. 1995).................... 22

*Parkinson v Hyundai Motor America*, 258 F.R.D. 580 (C.D. Cal 2008)........................................ 28

*Pulaski & Middleman, LLC v. Google*, Inc., 802 F.3d 979 (9th Cir. 2015),.................................. 20

*Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462 (1981) ...................................................... 14

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012)....................................... 28

*Rikos v. P&G,* 799 F.3d 497 (6th Cir. 2015) ............................................................. 20

*Rodman v. Safeway, Inc.*, 2014 WL 988992 (N.D. Cal. 2014) ............................................... 16

*Salvagne v. Fairfield Ford Inc.*, 264 F.R.D. 321 (S.D. Ohio 2009) ....................................... 18

*Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319 (2004)........................................... 14

*See In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 1917, 2013 U.S. Dist. LEXIS 137945 (N.D. Cal. June 20 2013 .............................................................................................................................. 23

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ................................ 14

*Sharpe v. A & W Concentrate Company, et al.*, No. 1:19-cv-00768 (E.D.N.Y. July 7, 2019); ............................ 14

*Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391 (N.D. Cal. 2005) ............................................ 17

*Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999). ................................................................ 22

*Stutman v. Chemical Bank*, 95 N.Y.2d 24 (2000) .................................................................... 22

*Tyson Foods Inc. v. Bouaphaekeo,* 136 S.Ct. 1036 (2016): ........................................................ 21

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) .................................................. 27

*Volino v. Progressive Casualty Insurance Company, et. al.,* No. 1:21-cv-06243 (S.D.N.Y. July 22, 2021); ...... 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................................... 16

*Wiegele v. FedEx Ground Package Sys.*, 2008 U.S. Dist. LEXIS 10246  (S.D. Cal. Feb. 12, 2008) ................ 14

*Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168 (9th Cir. 2010). .................................. 17, 26

*Zinser v. Acufix Research Inst., Inc,*  253 F.3d 1180 (9th Cir. 2001) ........................................... 26

**Statutes, Rules and Regulations**

7 C.F.R. § 60.128 ................................................................................................................. 10, 11

7 C.F.R. § 60.132 ...................................................................................................................... 8

7 C.F.R. § 60.200 .................................................................................................................... 11

50 C.F.R. § 660.14 .................................................................................................................. 10

60 Fed. Reg. 43825 (August 23, 1995) ............................................................................................ 8

Fed.R.Civ.P.23 ............................................................................... 7, 14-18, 20, 23, 26

New York General Business Law §§ 349 and 350 ................................................13, 14, 22, 23, 25, 26

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The central question in this litigation is whether Defendant American Tuna, Inc. and its corporate parent, Defendant World Wise Foods, Ltd. ("Defendants" or "American Tuna") deceived consumers by creating the impression that American Tuna brand tuna is caught in the waters of the United States, when a significant portion is not. The case is readily amenable to class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3).

Each of the Rule 23(a) criteria is satisfied.  Regarding numerosity, thousands of consumers purchased American Tuna brand products ("American Tuna Products").  For commonality, Plaintiff demonstrates that American Tuna's unlawful behavior was the same to all class members so that liability to each will be determined by answering the same questions, including whether American Tuna's conduct was likely to deceive a reasonable consumer.  For typicality, Plaintiff demonstrates that the legal theory and type of injury is the same for all class members, and with respect to adequacy, Plaintiff demonstrates that he and his counsel have no conflicts and have been vigorously prosecuting the case on behalf of the class.

In addition, the 23(b)(3) criteria are satisfied.  Plaintiff's claims present predominating common questions of fact or law based on objective standards that can be resolved through classwide evidence.  Because a determination of the truth or falsity of American Tuna's representations will resolve an issue that is central to the validity of each class member's claims in one stroke, class treatment is not only appropriate for Plaintiff's claims, it is superior to other available methods for fairly and efficiently adjudicating the controversy.

Accordingly, because: 1) the numerosity, commonality, typicality and adequacy requirements of Rule 23(a) are satisfied, and 2) questions of law or fact common to class members predominate over any questions affecting only individual members and a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy as required by Rule 23(b)(3), Plaintiff's motion should be granted.

## II.   FACTS

This case was filed in the Southern District of New York on November 4, 2021 and was transferred to the Southern District of California on April 1, 2022.  ECF Nos. 1, 39.  Pursuant to the Amended Scheduling Order, fact and class discovery closed on June 30, 2023.  ECF No. 95.

American Tuna Products display a large American flag on their labels along with claims such as "Caught & Canned in America," "Caught and Canned in the USA" and "100% American Made."  *See* Exhibit 1 (collection of American Tuna labels); Second Amended Complaint, ECF No. 75 ("SAC"), ¶ 27.  Buttressing these claims is an American Tuna website extoling the virtues of "Local Sourcing" and claiming, within the limitations period: "We source only the most premium pole & line tuna from…the American pole & line fishery in the American Pacific Northwest." [1] *See* Exhibit 2 (collection of American Tuna website screenshots); SAC, ¶¶ 9, 13.  The very name of the brand is "American Tuna," which, in the context of the referenced claims and imagery, reinforces the caught in America narrative.  In this manner, American Tuna has deceptively led consumers to believe that they are buying tuna caught in American waters -- yet a substantial amount of the tuna is caught outside the "waters of the United States," which extend 200 nautical miles from the coast of the United States to the outer limit of the U.S. Exclusive Economic Zone ("EEZ").  7 C.F.R. § 60.132.; 60 Fed. Reg. 43825 (August 23, 1995).

Discovery in this case has revealed that American Tuna does not possess -- nor even has access to -- anywhere near the requisite documentation necessary to validate

---

[1] American Tuna changed the language in this section from "American Pacific Northwest" to "North Pacific Ocean" after receiving the demand letter in this matter dated April 19, 2021.

its "Local Sourcing" claims.  The company by its own admission ██████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████  *See* Exhibit 5 (Map of Food and Agricultural Organization of the

United Nations Major Fishing Areas).  ██████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

 U.S. West Coast commercial fishing vessels that fish within the EEZ are generally required to carry electronic vessel monitoring systems on board.  50 C.F.R. § 660.14.  These systems consist of equipment that tracks the vessel's geographic position through a satellite communication system.   In discovery, Plaintiff requested all of American Tuna's electronic vessel tracking data demonstrating where its tuna was actually caught.  American Tuna produced none and admitted it "does not collect or maintain electronic tracking data from vessels."  *See* Exhibit 3, RFA Response No. 18. Only through electronic vessel tracking data, including GPS, could American Tuna prove exactly where it catches its tuna.  Yet it collects and maintains ***none***.

In response, American Tuna contends that because its tuna is caught on U.S.-flagged vessels anywhere in the world, the USDA's Country of Origin Labeling law, known as the COOL Act, allows the company make claims such as "Caught & Canned in America"; "Caught and Canned in the USA"; "100% American Made"; "Source[d] only… from… the American Pacific Northwest"; and "Local Sourcing."  The COOL Act, however, allows no such thing.  At best, under the express language of the COOL Act, the company could have labeled and marketed its products as "Product of the USA." The COOL Act states, in relevant part:

> § 60.128 United States country of origin.
>
> *United States country of origin* means in the case of:
>
> (d) Wild-fish and Shellfish: From fish or shellfish harvested in the waters of the United States or by a U.S. flagged vessel and processed in the United States or aboard a U.S. flagged vessel, and that has not undergone a substantial transformation (as established by U.S. Customs and Border Protection) outside of the United States.

7 C.F.R. § 60.128

§ 60.200 Country of origin notification. In providing notice of the country of origin as required by the Act, the following requirements shall be followed by retailers:

(e) Labeling Covered Commodities of United States Origin. A covered commodity may only bear the declaration of "Product of the U.S." at retail if it meets the definition of United States Country of Origin as defined in § 60.128.

7 C.F.R. § 60.200.

No reasonable interpretation of the COOL Act would result in a company being allowed to claim its product was caught in America, when it was caught outside of the waters of the United States on a U.S.-flagged vessel.  Neither the USDA, the FTC nor any federal agency would allow a company to claim something is caught in a particular place when it was not.  Tuna caught on a U.S.-flagged vessel outside the waters of the United States may be a ***Product of the U.S.***, but it is not ***Caught in America***.  American Tuna is misleadingly attempting to claim the latter by citing a statute allowing it to state only the former.

Consumer reviews of American Tuna Products on Amazon demonstrate the predictable impact of American Tuna's marketing and labeling: "[T]he number one reason I started buying it was it was fished here in the USA"; "It's pole caught in U.S waters…"; "Purchased because it is an American made product from our shores where the quality is so much better, less mercury. Expensive, but worth the price"; "Expensive can of tuna, but you get what you pay for so I don't mind paying for this… tuna caught right here in the USA…" SAC, ¶ 34.  As these reviews illustrate, reasonable consumers would not expect labeling and marketing claims such as "Caught and Canned in America," "100% American Made," and "We source only… from… the American Pacific Northwest" to mean ███████████████████████████████ ███████████████████████████████████████  They would reasonably expect the tuna to be "fished here in the USA."

10

American Tuna Products are very expensive for canned tuna. Yet, as the product reviews above demonstrate, consumers are willing to pay the premium because they have been led to believe through American Tuna's messaging that the tuna was caught in America. This is the only logical conclusion a consumer could reach based on American Tuna's labeling and marketing. American Tuna's Chairman disagrees, invoking -- and twisting -- the COOL Act:

> Q.    You believe a reasonable consumer would think tuna caught on a vessel thousands of miles away from the United States is "caught in America?"
>
> Mr. Keith:  Objection. Asked and answered.
>
> Mr. Kraselnik: I would like to hear it again.
>
> A.    **It is caught on a U.S. flag vessel. It is compliant with US COOL regulations. It may have been caught in a geographical area that is not America. And that is not relevant to the fact that it is U.S. – it is U.S. product.**

John Burton Deposition Transcript, 96: 7-20. American Tuna's Chairman, therefore, maintains that "caught in America" could mean "caught in a geographical area that is not America." A reasonable consumer, however, would always interpret the claim "caught in America" to be geographical in nature. Any other interpretation is tortured beyond reason, and the Chairman's testimony demonstrates how American Tuna is deceivingly manipulating language and deliberately misconstruing the COOL Act in order to deceive consumers into buying high-priced American Tuna Products. Consumers should not be tricked this way. The class action mechanism provides protection to consumers from this type of deceptive and misleading labeling and marketing.

## III.   THE PROPOSED CLASS

Plaintiff seeks to certify one class (the "Class"), defined as follows:

All persons who purchased American Tuna Products in New York State between November 2018 and the date class notice is disseminated primarily for personal, family, or household purposes, and not for resale.   American Tuna Products include:

- American Tuna Pole Caught Wild Albacore – No Salt (6 oz)
- American Tuna Pole Caught Wild Albacore – Sea Salt (6 oz)
- American Tuna Pole Caught Wild Albacore – Smoked w/Olive Oil (6 oz)
- American Tuna Pole Caught Wild Albacore – Jalapeño (6 oz)
- American Tuna Pole Caught Wild Albacore – Garlic (6 oz)
- American Tuna Pole Caught Wild Albacore – No Salt (3.5 oz)
- American Tuna Pole Caught Wild Albacore – Sea Salt (3.5 oz)
- American Tuna Pole Caught Wild Albacore – No Salt (66.5 oz)

Excluded from the Class are current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

## IV.   THE CLAIMS PLAINTIFF SEEKS TO CERTIFY

Plaintiff seeks to certify Counts II and IV of the Second Amended Complaint, which are claims for economic damages brought under the New York consumer protection statutes (i.e., GBL §§ 349 and 350).[2]   These claims are highly amenable to class treatment and have been readily certified by courts.   *See, e.g., Volino v. Progressive Casualty Insurance Company, et. al.,* No. 1:21-cv-06243 (S.D.N.Y. July 22, 2021);

---

[2] Although the Second Amended Complaint contains a breach of express warranty claim (SAC, ¶¶ 53-59), Plaintiff does not seek class certification of this claim, as courts have held that breach of express warranty is not appropriate for class treatment because it requires proof of reliance, which is typically an individual issue. *See, e.g., Rapczynski v. Skinnygirl Cocktails,* L.L.C. et al., 11 Civ. 6546, 2013 U.S. Dist. LEXIS 5635 (S.D.N.Y. Jan. 9, 2013)

*Sharpe v. A & W Concentrate Company, et al*., No. 1:19-cv-00768 (E.D.N.Y. July 7, 2019); *Kurtz v. Kimberly-Clark Corp., et al.,* 1:14-cv-01142 (E.D.N.Y. Feb. 21, 2014).

Plaintiff does not seek to certify Count III, which is for injunctive relief under GBL § 349, because plaintiff is unlikely to purchase American Tuna Products again.  As a result, Plaintiff lacks standing to seek injunctive relief.  *See In re Amla Litig.,* 320 F. Supp.3d 578, 593 (S.D.N.Y. 2018) (plaintiffs lacked standing to seek injunctive relief under GBL § 349 where they "adduce[d] no evidence that they are likely to repurchase the product, and indeed allege[d] that they would not have purchased the product in the first place had they known of its alleged defects").

## V.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 23, "'[a] class action may be maintained' if two conditions are met.  The first condition is the suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation).  If it does so, then the suit must also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 398 (2010).  These are the only criteria that must be met. *Briseno v. ConAgra Foods, Inc*., 844 F. 3d 1121, 1124-26 (9th Cir. 2017) ("declin[ing] to interpose an additional hurdle" -- administrative feasibility -- "into the class certification process delineated in the enacted Rule").  In ruling on a motion for class certification, "the court 'is bound to take the substantive allegations of the complaint as true.'" *Wiegele v. FedEx Ground Package Sys*., 2008 U.S. Dist. LEXIS 10246, at *8 (S.D. Cal. Feb. 12, 2008) (*quoting Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975)).  California "has a public policy which encourages the use of the class action device." *Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462, 473 (1981); *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 340 (2004).  On a motion for class certification the court makes no findings of fact.  *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 337, n.3 (N.D. Cal. 2010).  "In determining whether class certification is appropriate,

the question is not whether . . . [plaintiffs] will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Hofstetter v. Chase Home Fin.*, LLC, No. C10-01313 WHA, 2011 WL 1225900, at *6 (N.D. Cal. Mar. 31, 2011).

Under Rule 23(b)(3) a class may be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The factors set out in Rule 23(b)(3) for evaluating predominance and superiority are: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (D) the likely difficulties in managing a class action. Fed.R.Civ.P.23(b)(3).

## VI.   ARGUMENT

### A. The Requirements of Rule 23(a) are Satisfied

#### 1.   Numerosity

Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *In re Abbott Labs Norvir Antitrust Litig*., Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007). Numerosity is generally met if a proposed class has at least 40 members. *See, e.g., Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-914 (9th Cir. 1964).  American Tuna Products are sold in every Whole Foods Markets in New York State.  They are also sold online through Amazon and the American Tuna website. ███████████████ ███████████████████████████████████████████████ Common sense

accordingly dictates that the class is sufficiently numerous that joinder of all members of the Class is impracticable. *See*, *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) (mass-market beverage purchases satisfied numerosity).

### 2.   Commonality

Rule 23(a)(2) is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This criterion is satisfied whenever "the class members have suffered the same injury," so that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ["Dukes"]. "Where questions common to class members present significant issues that can be resolved in a single adjudication 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Rodman v. Safeway, Inc.*, 2014 WL 988992, at *4 (N.D. Cal. 2014) (*quoting Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "What matters" is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes, 564 U.S.* at 350; *see, also, Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). "[P]laintiff's burden for showing commonality is 'minimal,'" *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *3 (S.D. Cal. May 12, 2016) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts." *Hanlon*, 150 F.3d at 1019. Commonality is found "where a defendant has engaged in standardized conduct toward members of the class." *Hale v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 4992504, at *6 (S.D. Ill. Sept. 16, 2016) (*citing Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (collecting cases)). Under Rule 23(a)(2), "even a single common question will do." *Dukes*, 564 U.S. at 359. Here, the Class includes only persons who purchased American Tuna Products in New York State under the false impression that the tuna in American Tuna Products was sourced from American waters.

The gravamen of the Class's claims is that American Tuna did not provide products that conformed to its labeling and marketing because a substantial amount – and undisputedly more than a negligible amount – of the tuna in American Tuna Products in fact is caught outside of the "waters of the United States," as that term is defined in the COOL regulations.  This "common contention" is "capable of classwide resolution," *see Dukes*, 564 U.S. at 350, as American Tuna's liability to all class members will be determined by answering the same questions. Because these representations were made to all class members on the product labeling and marketing, common questions include whether American Tuna represented that the tuna in American Tuna Products was caught in America, whether that representation was false, whether that representation was material, and whether class members suffered damages as a result of this misrepresentation.  Accordingly, commonality is satisfied.

### 3. Typicality

Rule 23(a)(3) is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This means plaintiff's claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *see also Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005).  "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp*, Inc., 713 F.2d 225, 232 (7th Cir. 1983).  Thus, "[t]o assess whether or not the representative's claims are typical, the Court examines 'whether other

members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *In re Brazilian Blowout Litig.*, No. CV 10-8452-JFW MANX, 2011 WL 10962891, at *3 (C.D. Cal. Apr. 12, 2011) *(quoting Hanon*, 976 F.2d at 508 (quotation omitted)). "In instances where it is alleged that the defendant[] engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent members." *Salvagne v. Fairfield Ford Inc*., 264 F.R.D. 321, 328 (S.D. Ohio 2009) (quotation omitted). Here, Plaintiff alleges that he and all class members were exposed to the same misleading claims and omissions, were influenced by those claims, and were injured in the same manner.  Plaintiff's claims are therefore typical of class members' claims. *Lilly v. Jamba Juice Co*., 308 F.R.D. 231, 240 (N.D. Cal. 2014) (plaintiffs' claims are typical when "they purchased products that are the same as, or very similar to, the products challenged by the rest of the proposed class."). The typicality requirement is also satisfied.

### 4.    Adequacy

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiff has demonstrated that he and his counsel satisfy these criteria. Plaintiff has no conflict of interest with other class members, and has prosecuted and will continue prosecuting the action vigorously on behalf of the class. *See* Declaration of Ray Glass ("Glass Decl."), ¶¶ 3,5. Plaintiff is familiar with the underlying legal claims asserted in this case and has stayed informed about its status. *See* Glass Decl., ¶ 2.  He

has sat for deposition, responded to discovery demands and reviewed filings. *See* Glass Decl., ¶ 4. Plaintiff does not possess any interests that conflict with those of the proposed Class because, like absent Class members, Plaintiff lost money because the American Tuna Products are not as advertised, and is motivated to establish American Tuna's liability and attain remedies equally applicable to and beneficial for the Class. (Glass Decl., ¶¶ 5-7). Under Rule 23(g)(1), the factors courts must consider in appointing class counsel are:

(1)   The work counsel has done in identifying or investigating potential claims in the action.

Counsel has thoroughly investigated the source of the American Tuna Products prior to litigation, and in discovery through analysis of documents and information produced by American Tuna in response to Plaintiff's interrogatories, document requests and requests for admission including ███████████████████████████ ████████████████████████████████ and in the depositions of current and former American Tuna executives. *See* Declaration of Robert L. Kraselnik (Kraselnik Decl.), ¶ 7.

(2)   Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in this litigation.

Counsel is experienced in class action litigation, having been appointed class counsel and settling on behalf of a class multiple times. Kraselnik Decl., ¶ 3. In addition, counsel is experienced in consumer protection law, and has particular experience with Made in America claims. Kraselnik Decl., ¶ 5, 6.

(3)   Counsel's knowledge of the applicable law.

Counsel has substantial knowledge of Rule 23 and state and federal consumer law. Kraselnik Decl., ¶ 4.

(4)   The resources that counsel will commit to representing the class.

Counsel has and will continue to dedicate substantial resources to the prosecution of this action. In addition to the considerable time dedicated to this case, counsel has retained an outside expert and incurred significant out of pocket expenses. Kraselnik Decl., ¶ 8

The adequacy requirement is therefore also satisfied.

### B.    The Requirements of Rule 23(b) are Satisfied

Rule 23(b)(3) is satisfied when a court determines that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.    Common Issues Predominate

"Predominance is a test readily met in certain cases alleging consumer or securities fraud*…." Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. The requirement demands only predominance of common questions, not exclusivity or unanimity of them. Fed. R. Civ. P. 23(b)(3). Here, the common question of whether American Tuna's messaging is false or deceptive predominates over any individual issues. *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (S.D. Cal. 2012) ("when plaintiffs are exposed to a common advertising campaign, common issues predominate."). Similarly, the question whether the Class is entitled to restitution and damages also predominates. *Pulaski & Middleman, LLC v. Google*, Inc., 802 F.3d 979, 985-86 (9th Cir. 2015), cert. denied, 195 L. Ed. 2d 780 (2016); *see also Rikos v. P&G*, 799 F.3d 497, 523-23 (6th Cir. 2015).

### a.      The Predominance of Common Issues of Fact

Common questions of fact predominate in this case because the claims of Plaintiff and each class member arise from the same factual misrepresentation:  that the tuna is caught in America.

Accordingly, determining the truth or falsity of the following questions of fact will all but dispose of the litigation.  In addition, those determinations can be made with evidence that is common to the class.

1.      Did American Tuna represent that the tuna in American Tuna Products was caught in America?

This question is common to all consumers who purchased American Tuna products during the class period and can be demonstrated with common evidence.

2.      Were the representations false?

This is a binary question which will be decided once with common evidence.

3.      Were the representations material?

Materiality is a question of fact and is analyzed from the viewpoint of an objective, reasonable consumer. *Mass. Mutual Life Insurance Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1294 (2002) (materiality is a "common question of fact suitable for class treatment.")  Thus, the question of whether a reasonable consumer would consider America Tuna's representations material can be answered for the whole class.

4.      Did class members suffer damages as a result of these misrepresentations?

Under *Comcast Corp. v. Behrend,* 569 U.S. 27, 34 (2013)*,* Plaintiff must show that "damages are capable of measurement on a classwide basis."  The evidence used to perform this analysis is not an individual to class members. *See* Declaration of Donald M. May, Ph.D., CPA, dated August 7, 2023, submitted herewith.

Since the most important issues in this case can be determined on a classwide basis, as the Supreme Court stated in *Tyson Foods Inc. v. Bouaphaekeo,* 136 S.Ct. 1036,

1045 (2016): "[T]he common, aggregation-enabling, issues in this case are more prevalent" than "non-common, aggregation-defeating individual issues."

### b.  The Predominance of Common Issues of Law

"Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 809 (2011).

To state a claim under GBL §§ 349 and 350, "a plaintiff must allege that a defendant has engaged in: (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice. *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012); *see Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002). Whether a representation or an omission, the deceptive practice must be "likely to mislead a reasonable consumer acting reasonably under the circumstances" *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20 (N.Y. 1995)

The deceptive practice need not reach "the level of common-law fraud to be actionable under section 349." *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (*citing Gaidon v. Guardian Life Ins. Co.,* 94 N.Y.2d 330, 343) (1999)). In fact, "[a]lthough General Business Law § 349 claims have been aptly characterized as similar to fraud claims, they are critically different." *Gaidon*, 94 N.Y.2d at 343. For example, while reliance is an element of a fraud claim, it is not an element of a GBL § 349 claim. *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000); *Small v. Lorillard Tobacco Co*., 94 N.Y.2d 43, 55-56 (1999). Nor is reliance required for a GBL § 350 claim. *Koch v. Acker, Merrall & Condit Co*., 18 N.Y.3d 940 (2012).

Therefore, the class members will not have to prove reliance -- which could require a more individualized showing -- only that American Tuna's messaging was likely to mislead a reasonable consumer acting reasonably under the circumstances and caused injury, making this action ideal for class treatment. With respect to causation,

merely "seeing the misleading statements before coming into possession of the products" is sufficient to establish that requisite causal connection. *Oden v. Boston Scientific Corporation,* 330 F. Supp. 3d 877, 902 (EDNY 2018), *adhered to on reconsideration*, 2019 WL 1118052 (EDNY 2019).

Additionally, the standards under GBL §§ 349 and 350 are "substantively identical." *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007)

As a result, common issued predominate over individual ones with respect to Plaintiff's claims under the New York consumer protection statutes.

### 2.    Common Proof of Damages

Under *Comcast*, plaintiffs do not need to perform a damages calculation at the class certification stage, but must show that "their damages stemmed from the defendant's actions that created the legal liability" and that "damages could feasibly and efficiently be calculated once the common liability questions are adjudicated." *Levva v Medline Industries, Inc.,* 716 F.3d 510, 514 (9th Cir. 2013).

For this motion, the showing is limited to a suitable methodology to tie the alleged wrongdoing to the damages suffered by the class. *See In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 1917, 2013 U.S. Dist. LEXIS 137945 *138 (N.D. Cal. June 20 2013 ("Comcast did not articulate any requirement that a damage calculation be performed at the class certification stage."); *Brown v. Hain Celestial Group, Inc.* No. 11-03082, 2014 U.S. Dist. LEXIS 162038 *57 (N.D. Cal. Nov 18 2014) ("The point for Rule 23 purposes is to determine whether there is an acceptable classwide approach, not to actually calculate under that approach before liability is established.")

Proposing such a damages methodology imposes "only a very limited burden." *Lilly v. Jamba Juice Co.,* 308 F.R.D. 231, 244 (N.D. Cal 2014) citing *Leyva*, 716 F.3d at 514.)  A showing that the methods will work with certainty is not required. *Chavez v Blue Sky Natural Beverages Co.*, 268 F.R.D. 365, 379 (N.D. Cal 2010); *In re Diamond*

*Foods Inc.*, 295 F.R.D. 240, 252 (N.D. Cal 2013) (plaintiff need not prove damages but only show damages are capable of proof on a classwide basis); *In re High Tech Employees Antitrust Litig.*, 289 F.R.D. 555, 582-83 (N.D. Cal 2013) (plaintiff met burden by showing "plausible method" of classwide damage calculation).

The first step in a damages study is the "translation of the legal theory of the harmful event into an analysis of the economic impact of that event." *Comcast* at 38. Here, the harmful event is telling consumers the tuna was caught in America when it was not.

Plaintiff has submitted the Declaration of Donald M. May, Ph.D., CPA ("May Decl.") to describe the proposed methodologies for calculating damages. There are four damage theories:

<u>Full Refund</u>

If the Plaintiff is awarded a full refund, the classwide damage analysis is a simple calculation of total sales of American Tuna Products during the class period. May Decl. ¶¶ 13-15.

<u>Disgorgement of Profits</u>

If Plaintiff is successful, the class might be awarded damages in the amount of a disgorgement of profits. *See, e.g., Cortez v. Purolator Air Filtration Products,* 23 Cal 4th 163, 177 (2000). If so, the classwide damage calculation is equal to the units sold in New York State during the class period multiplied by the per-unit profit. May Decl. ¶¶ 16-18 (wholesale price per unit and cost of goods sold including packaging, materials and transportation costs needed for profit calculation).

<u>Price Premium Calculation</u>

In this case, Plaintiff proposes a price premium model based on the difference in value between the American Tuna Products as they were labeled and marketed and the value of the American Tuna Products as they were actually delivered to Plaintiff and the Class. Plaintiff's damages methodology will determine the magnitude of the premium

for tuna that was definitely caught in America, as this is what American Tuna's consumers are paying a premium for.   Once the price premium is determined, it can be multiplied by the number of products sold during the class period in New York State to determine class damages. May Decl. ¶¶ 19-20.

There are several ways to calculate a price premium, including a conjoint analysis, contingent valuation and hedonic regression.   Plaintiff's expert proposes a hedonic regression methodology. May Decl. ¶ 21. The sales, attributes, price, and cost of goods of competing tuna products can be analyzed to isolate the value of the caught in America representations made by American Tuna.   ¶¶ 22-37.   Dr. May's hedonic regression model is complete and robust, and can reasonably calculate price premium damages with data that is available from American Tuna and third parties. *See, Just Film v. Buono*, 847 F.3d 1121 (9th Cir. 2017) ("That some individualized calculations may be necessary does not defeat finding predominance.")

The use of hedonic regression to calculate a price premium is widely accepted by California federal courts.   *See Kumar v. Salov North America Corp.,* 2016 U.S. Dist. LEXIS 92374 *18 (N.D. Cal July 15, 2016); *In re ConAgra Foods Inc.*  90 F. Supp. 3d 919 (C.D. Cal. Feb 23, 2015) aff'd, *Briseno v. ConAgra, 674 Fed. Appx. 654* (9th Cir. Jan 3, 2017); *Dei Rossi v. Whirlpool*, Case No. 12-cv-00125, 2015 U.S. Dist. LEXIS 55574, *2 n. (E.D. Cal April 28, 2015).

Statutory Damages

The New York General Business Law ("GBL") §349 provides that any person injured by reason of violation of GBL §349 may bring an action to recover "actual damages or fifty dollars, whichever is greater." NY Gen Bus L §§349.  GBL §350 allows a plaintiff to recover "actual damages or five hundred dollars, whichever is greater." *Id.* §350-e.  Recently, a California federal court, applying GBL §349 and §350, awarded the plaintiff and the class fifty dollars per unit sold plus prejudgment interest. *Montera v. Premier Nutrition Corp.,* 2022 WL 3348573 (N.D. Cal. Aug. 12, 2022). The *Montera*

Court declined to address whether a plaintiff can recover damages under both GBL §349 and GBL §350 for the same violation.

If the Plaintiff is awarded statutory damages under the NY General Business Law §349, the classwide damage analysis is a simple calculation of total unit sales of the Products in New York State within the Class Period multiplied by $50 plus prejudgment interest.  May Decl. ¶¶ 38-39.  (If the Court also chooses to apply the $500 per unit damage award of GBL §350, then the calculation would simply be total unit sales of the Products in New York State within the Class Period multiplied by $550 plus prejudgment interest.)

### 3.    Superiority

Rule 23(b)(3) also requires that the class mechanism be superior to other methods of adjudication. *See Hanlon,* 150 F.3d at 1023. To evaluate superiority, courts consider:

(A)    the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).

"A consideration of these factors requires the court to focus on the efficiency and economy of elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Zinser v. Acufix Research Inst., Inc.* 253 F.3d 1180, 1190 (9th Cir. 2001).  Superiority is satisfied here considering these factors.

First, class members have no interest in controlling individual actions because the product costs under $10.  Superiority "is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Tait* 289, F.R.D. at 486 (*quoting Wolin, 617 F.3d at 1175).*  The cost of American Tuna Products, although expensive for tuna, does not incentivize class members to seek redress on their own.

This is especially true where the real source of the tuna was not readily apparent to the typical consumer and class members would not have known that they had been lied to. *See also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device.")

Second, Plaintiff knows of no other litigation involving the same claims.

Third, the presence of the litigation in this forum is a neutral factor.

Fourth, there will be no difficulties managing this action because it concerns straightforward claims based on a limited amount of labeling and marketing statements that conveyed consistent messages. Manageability concerns cannot, in any event, scuttle class certification under the rubric of superiority "if no realistic alternative exists." *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996); *see also Leyva*, 716 F.3d at 514-15. "The Ninth Circuit has recognized that a class action is plaintiff's only realistic method for recovery if there are multiple claims against the same defendant for relatively small sums." *Culley v. Lincare Inc.,* 2016 WL 4208567, at *8 (E.D. Cal. Aug. 10, 2016).

Accordingly, a class action is the best method to resolve this dispute.

## C. The Class is Ascertainable

In the Ninth Circuit, "'[t]he requirement of an ascertainable class is met as long as the class can be defined through objective criteria." *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014); *Briseno*, 844 F.3d at 1124 n.4 ("noting that the Ninth Circuit has not expressly adopted an "ascertainability" requirement) "A class is sufficiently ascertainable if the proposed class definition allows prospective plaintiffs to determine whether they are class members with a potential right to recover." *Id.* (quotations omitted); *See also McCrary v. Elations Co.,* LLC, No. EDCV 13-00242 JGB OP, 2014 WL 1779243, at *8 (C.D.

Cal. Jan. 13, 2014) (same, applying Ninth Circuit criteria). The class definition must include objective criteria that can be used to determine if a consumer is a member of the class. *See Parkinson v Hyundai Motor America*, 258 F.R.D. 580, 593-94 (C.D. Cal 2008).

Notably, Courts in this circuit routinely certify classes for low-cost consumer products where purchasers are unlikely to have retained receipts and where it may be impossible to identify and notice every member of the class, as long as objective criteria can be applied to determine eligibility. *See e.g., Lilly*, 2014 WL 4652283, at *4 ("Few people retain receipts for low-priced goods, since there is little possibility they will need to later verify that they made the purchase. Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits. In the absence of a class action, the injury would go unredressed."); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (noting that if proof of class membership was required for certification, "there would be no such thing as a consumer class action"). The criteria in this case is simple: consumers who purchased American Tuna Products during the class period in New York State. The proposed class definition clearly specifies the products at issue and the relevant time period. Objective criteria define the Class, and because the class is defined by objective criteria, members of the class can be ascertained. *See, e.g., Forcellati*, 2014 WL 1410264, at *5.

## VII.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Class Certification.

27

August 7, 2023

By:   /s/ Robert L. Kraselnik
LAW OFFICES OF
ROBERT L. KRASELNIK, PLLC
261 Westchester Avenue
Tuckahoe, NY 10707
(646) 342-2019
robert@kraselnik.com
*Attorney for Plaintiff and the Proposed Class*

Jayson M. Lorenzo
*Local Counsel*
J. LORENZO LAW
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92008
(760) 560-2515
jmlorenzo.esq@gmail.com