William P. Keith – CA Bar No. 270587
wkeith@kleinandwilson.com
Hannah B. Stetson – CA Bar No. 327086
hstetson@kleinandwilson.com
KLEIN & WILSON LLP
4770 Von Karman Avenue
Newport Beach, California 92660
(949) 631-3300; Facsimile (949) 631-3703

Scott L. Metzger – CA Bar No. 89718
metzger@dmwplc.com
DUCKOR METZGER & WYNNE
A Professional Law Corporation
101 West Broadway, Suite 1700
San Diego, California 92101
(619) 209-3000; Facsimile (619) 209-3043

Attorneys for Defendant AMERICAN TUNA, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY CRAIG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN TUNA, INC. AND WORLD WISE FOODS, LTD.,<br><br>Defendants. | CASE NO. 3:22-cv-00473-RSH-MSB<br><br>**DEFENDANT AMERICAN TUNA, INC,'S BRIEF RE ARTICLE III STANDING**<br><br>District Judge: Hon. Robert S. Huie<br>Courtroom: 3B |

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1                               3:22-cv-00473-RSH-MSB

# TABLE OF CONTENTS

**Page No.**

1. Introduction .................................................................................................... 4

2. The Plaintiff Has The Burden To Prove Article III Standing At The Class Certification Stage ........................................................................ 5

3. Argument ......................................................................................................... 6

    A. Glass Cannot Rely on His Pleadings to Establish Standing at the Class Certification Stage. ............................................ 6

    B. Plaintiff Failed to Prove He Saw the Alleged Misrepresentations. ................................................................................ 8

    C. American Tuna Was Not Required to File a Motion to Dismiss In Order to Challenge Article III Standing at Class Certification. ................................................................................ 11

    D. There is No Evidence Plaintiff Saw the "Made in America" and "100% American Made" Labels. ............................... 12

4. Conclusion .................................................................................................... 13

# TABLE OF AUTHORITIES

Page No.

**Federal Cases**

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ............................................... 7, 8

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .................................................... 6

*Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010),
   rev'd, 564 U.S. 338 (2011) .................................................................................. 8

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ........................ 9, 12

*Evans v. Linden Research, Inc.*, No. 11–1078, 2012 WL 5877579
   (N.D. Cal. Nov. 20, 2012) ................................................................................... 6

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ............................................ 8

*Hart v. TWC Prod. & Tech. LLC*, No. 20-CV-03842-JST,
   2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ............................................... 9, 10

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .................. 11

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ................................................ 6

*Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349 (S.D.N.Y. 2022) ................ 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................... 5, 7

*Moore v. Apple Inc.*, 309 F.R.D. 532 (N.D. Cal. 2015) ...................................... 6, 8

*Racies v. Quincy Bioscience, LLC*, No. 15-CV-00292-HSG,
   2020 WL 2113852 (N.D. Cal. May 4, 2020) ...................................................... 9

*Rivera v. Invitation Homes, Inc.*, No. 18-CV-03158-JSW,
   2022 WL 504161 (N.D. Cal. Feb. 18, 2022) ....................................................... 6

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018) ..................... 6, 9, 10

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......................................................... 5

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................... 7, 8

*Wiegele v. Fedex Ground Package Sys., Inc.*, No. 06CV1330,
   2008 WL 410691 (S.D. Cal. Feb. 12, 2008) ........................................................ 7

**California Cases**

*Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011) .............................................. 7

905213

Defendant American Tuna, Inc. ("American Tuna") submits this brief in connection with the Court's Order Denying Class Certification (ECF No. 133), which ordered Plaintiff to show cause why the action should not be dismissed for lack of Article III standing. Specifically, this brief addresses Plaintiff's Response to Order to Show Cause (the "OSC Response Brief" [ECF No. 137]).

## 1. INTRODUCTION

The evidence presented to the Court at the time of Plaintiff's Motion for Class Certification (the "Motion for Class Certification" [ECF No. 99]) demonstrated that the only plaintiff, Ray Glass ("Glass"), does not have Article III standing to prosecute claims against American Tuna. Glass provided no evidence that he ever saw the "Caught and Canned in America" and "Caught and Canned in the USA" label statements that he contended were misleading, and American Tuna proved that Glass could not have seen them.

Glass clearly admitted that he bought American Tuna's products for a very limited time period. At his deposition, he testified he only purchased American Tuna products at one outlet, Whole Foods, during 2022 and 2023. (Exhibit 29 to the Declaration of William P. Keith in Support of Defendant American Tuna, Inc's Opposition to Plaintiff's Motion for Class Certification ["Glass Depo."], 64:23-66:3; 89:17-90:1; 93:13-23; 95:8-21 [ECF No. 109-6].) When shown the only label that was available at Whole Foods during that period, Glass admitted it was "true." (*Id.* at 128:15.)

American Tuna presented evidence showing it would have been impossible for Glass to purchase the "Caught and Canned in America" and "Caught and Canned in the USA" labels, since they were not available to consumers at Whole Foods after August 2018 and September 2018, respectively. (Declaration of Sarah Eames in Support of Defendant American Tuna, Inc's Opposition to Plaintiff's Motion for Class Certification ["Eames Decl."], ¶¶ 60-69, 91-96, and Exhibits 5-8 [ECF No. 109-3].) In light of the dearth of evidence from Glass, and American Tuna's stronger and clearer

905213

showing that proved Glass could not have seen the alleged misrepresentations at issue, the Court correctly concluded that Glass lacked Article III standing.

Faced with this conundrum, Plaintiff now relies on a collection of irrelevant and outdated legal authority to conflate his burden to prove standing at the class certification stage with the burden to avoid dismissal on a Rule 12(b)(1) motion asserting a facial attack to jurisdiction. But since establishing standing at the present stage of the litigation requires Plaintiff to present evidentiary proof, Plaintiff cannot rest on, or even rely on, his pleadings. Nor is the Court bound to accept Plaintiff's evidence as true. Even if Plaintiff's evidence suggested that Glass saw the relevant labels (it does not), American Tuna thoroughly refuted that possibility with its own detailed and more persuasive evidence.

Thus, Plaintiff's brief filed in response to this Court's order to show cause why the case should not be dismissed does not provide any sound answer (or any new evidence) to the question of how this case could possibly continue in federal court. Since Glass lacks Article III standing, the Court should dismiss the case.

## 2. THE PLAINTIFF HAS THE BURDEN TO PROVE ARTICLE III STANDING AT THE CLASS CERTIFICATION STAGE

To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Since the elements of Article III standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

/ / /

/ / /

"On a motion for class certification, this means Plaintiff must show standing 'through evidentiary proof.'" *Moore v. Apple Inc.*, 309 F.R.D. 532, 539-40 (N.D. Cal. 2015) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)); *see also Rivera v. Invitation Homes, Inc.*, No. 18-CV-03158-JSW, 2022 WL 504161, at *5 (N.D. Cal. Feb. 18, 2022) ("On a motion for class certification, . . . a plaintiff must show standing through evidentiary proof."); *Evans v. Linden Research, Inc.*, No. 11–1078, 2012 WL 5877579, at *6 (N.D. Cal. Nov. 20, 2012) (At class certification, "Plaintiffs must demonstrate, not merely allege, that they have suffered an injury-in-fact to establish Article III standing to bring the claims asserted on behalf of the [class].").

As when ruling on a Rule 12(b)(1) motion making a *factual* challenge, at the class certification stage the court is permitted to weigh conflicting evidence regarding its jurisdiction. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) ("a district court should analyze the 'persuasiveness of the evidence presented' at the Rule 23 stage"); *cf. Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014) ("[I]f the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself.").

3. **ARGUMENT**

   A. **Glass Cannot Rely on His Pleadings to Establish Standing at the Class Certification Stage.**

Plaintiff first argues that he established Article III standing by way of the allegations in his Second Amended Complaint ("SAC"), which he contends the Court must accept as true. But that proposition is flatly contradicted by a long line of authority holding that at the class certification stage, the named plaintiff must demonstrate standing with evidence, not allegations. *See, e.g.*, *Moore v. Apple Inc.*, 309 F.R.D. at 539-40 ("On a motion for class certification, this means Plaintiff must show standing through evidentiary proof.") (internal quotation omitted).

/ / /

/ / /

905213

1	The cases Plaintiff relies on are either distinguishable or are no longer good law. Plaintiff begins by citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011), contending that the statements in the SAC meet the pleading standard discussed in that case. But *Kwikset* is not helpful to Plaintiff because it only addresses a plaintiff's burden to *plead* standing under the UCL and FAL in order to survive a demurrer, not a plaintiff's burden at the class certification stage. *Id.* at 327.

In its opinion, the *Kwikset* Court quotes from *Lujan*, the definitive case on Article III standing, explaining that the elements of standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation. [Citations.] **At the pleading stage**, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ." *Id.* (quoting *Lujan*, 504 U.S. at 561) (emphasis added). In accordance with these principles, the *Kwikset* Court held that the plaintiffs' allegations sufficiently plead standing and that the demurrer was properly overruled. *Id.* at 327-28. Therefore, *Kwikset* is distinguishable because it addressed the plaintiff's burden at the pleading stage, not at class certification.

Plaintiff also cites a passage in *Wiegele v. Fedex Ground Package Sys., Inc.*, No. 06CV1330, 2008 WL 410691, at *3 (S.D. Cal. Feb. 12, 2008), which states that "on a motion for class certification, the court "'is bound to take the substantive allegations of the complaint as true, . . .'" *Id.* (*quoting Blackie v. Barrack*, 524 F.2d 891, 901, n.17 (9th Cir. 1975)). But Plaintiff's reliance on *Wiegele* is problematic because the statement he relies on is no longer good law. To the extent that the partial quote from footnote 17 in *Blackie* can be read to say that the district court is required to take the plaintiff's allegations as true when ruling on a class certification motion, that proposition was overruled by the United States Supreme Court in in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).

In *Dukes*, the Supreme Court made clear that "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in*

7
3:22-cv-00473-RSH-MSB

*fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 350 (emphasis in original). The *Dukes* Court recognized that the district court may be required to "probe behind the pleadings" and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350-351 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160-161 (1982)).[1]

After the court's pronouncement in *Dukes* that evidentiary proof is required at class certification, and later decisions like *Moore v. Apple Inc.*, 309 F.R.D. at 539-40, which make clear this same burden applies to Article III standing, it is evident that a plaintiff cannot simply rest on the allegations of his complaint. Thus, Glass cannot rely on the statements in his SAC to prove standing at the present stage of this case.

## B. Plaintiff Failed to Prove He Saw the Alleged Misrepresentations.

Plaintiff also overlooks that at the class certification stage, the Court is not confined to his evidence on the issue of Article III standing. As explained by the Ninth Circuit, "a district court should analyze the 'persuasiveness of the evidence presented'

---

[1] Even before the Supreme Court's opinion in *Dukes*, the Ninth Circuit clarified what it meant in *Blackie*'s footnote 17 in its *en banc* decision in *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 589 (9th Cir. 2010), rev'd, 564 U.S. 338 (2011). There, the Ninth Circuit explained that "[i]n the less typical instances in which district courts in this circuit have been led astray, a common reason seems to have been a misreading of our statement in footnote 17 of *Blackie v. Barrack*, in which we explained that district courts are 'bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that the plaintiff may be altogether unable to prove his allegations.' But, that statement is taken out of context when relied on in this manner." *Dukes*, 603 F.3d at 589.

The Ninth Circuit *en banc* panel went on to explain: "The subsequent sentences in *Blackie*, which the erring district courts almost universally neglect to include, explained that, although 'the court may not put the plaintiff to preliminary proof of his claim, it does require sufficient information to form a reasonable judgment. Lacking that, the court may request the parties to supplement the pleadings with sufficient material to allow an informed judgment on *each of the Rule's requirements*.'" *Dukes*, 603 F.3d at 589 (quoting *Blackie*, 524 F.2d at 901, n.17) (emphasis added by *Dukes* Court).

The Ninth Circuit then stated: "A better reading of *Blackie*, then, is to understand it as having the meaning that our cases, and the majority of district court opinions, have ascribed to it: *Blackie* is entirely consistent with the Supreme Court's guidance, explicitly requiring a district court to probe behind the pleadings if doing so is necessary to make findings on the Rule 23 certification decision." *Dukes*, 603 F.3d at 589.

at the Rule 23 stage." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)). *See also*, *Hart v. TWC Prod. & Tech. LLC,* No. 20-CV-03842-JST, 2023 WL 3568078, at *4 (N.D. Cal. Mar. 30, 2023) (at class certification stage, discussing that certain exhibits "are unpersuasive and thus insufficient to establish standing" while other exhibits offered were persuasive and helped demonstrate standing).

Here, apart from his pleadings, Plaintiff contends he demonstrated Article III standing based on the statements in his declaration and deposition. The declaration, however, says nothing about what label statements Plaintiff relied on when purchasing American Tuna's products. As the Court pointed out in its order, it does not even attempt to describe what labels Glass purchased. (Order Denying Class Certification, 6:6-17 [ECF No. 133].) It certainly does not say Glass saw or relied on the "Caught and Canned in America" or "Caught and Canned in the USA" labels.

Plaintiff also relies on an answer in his deposition, where he says that he thought the label said "caught in American waters"—something which no label ever said. Relying on *Racies v. Quincy Bioscience, LLC*, No. 15-CV-00292-HSG, 2020 WL 2113852 (N.D. Cal. May 4, 2020), Plaintiff contends he is not required to recite verbatim the misleading label statement. But this, too, is unavailing.

In *Racies*, the court decertified a class after trial, holding that when testifying at trial the plaintiff "ultimately was equivocal as to whether he saw and relied on the representations on which he claims the other class members relied." *Id.* at *4. One of the problems the court pointed to was that counsel failed show the plaintiff a copy of the allegedly offending label and elicit testimony that he saw and relied on it. *Id.* While the court noted that the plaintiff was not required to recite the statements from the label he purchased verbatim, when confronted over whether he purchased the misleading label or another version, he could not remember. *Id.* at *5.

*Racies* is not helpful to Plaintiff. As in *Racies*, here the problem of proof is not merely a matter a Glass's failure to recite the exact wording of the label he purchased.

905213

As this Court previously pointed out, the problem is that Glass never testified that he actually purchased labels bearing the allegedly misleading statements—either in the formulation he recited at deposition ("caught in American waters") or the version on the 2016 Label and 2017 Label. (Order Denying Class Certification, 7:4-11.)

Plaintiff also takes issue with the Court's citation to *Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 360 (S.D.N.Y. 2022), contending that unlike in that case, Glass did say he purchased the labels at issue. But Plaintiff's effort to stitch together statements from his declaration and deposition is misleading, since neither state what label Glass allegedly purchased. (*See* Order Denying Class Certification, 6:15-16, 7:4-5.)

Even if Glass's deposition testimony could be construed as stating that he saw and relied on a specific label statement, American Tuna presented more persuasive evidence on what labels were available at Whole Foods in 2022 and 2023—the period when Glass purchased American Tuna products. The declaration of American Tuna's CEO, Sarah Eames, supported by exhibits of the actual labels and their corresponding purchase invoices, provided a comprehensive history on what labels were available through each outlet at different periods in time. (Eames Decl., ¶¶ 60-89.)

American Tuna's evidence showed that the labels Plaintiff contended were misleading, the 2016 Label ("Caught and Canned in the USA") and the 2017 Label ("Caught and Canned in America") were only available to consumers at Whole Foods until August 2018 and September 2018, respectively. (Eames Decl., ¶¶ 60-69, 91-96, Exhibit 5-8.) This means that neither label was available at the only place Glass purchased American Tuna for at least three years before he started buying the product.

Thus, to the extent there was disagreement in the evidence on the issue of Article III standing, the Court was permitted to weigh that evidence and decide whether Glass had standing. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018); *Hart*, No. 20-CV-03842-JST, 2023 WL 3568078, at *4. The Court appears to have done so. And given that it would have been impossible for Glass to

have purchased a can of tuna with the allegedly misleading statements, the Court came to the correct conclusion.

### C. American Tuna Was Not Required to File a Motion to Dismiss In Order to Challenge Article III Standing at Class Certification.

Plaintiff also argues American Tuna's decision not to file a motion to dismiss to eliminate the New York GBL claims on statute of limitations grounds, or its supposed failure to raise those issues "in pre-complaint negotiations," somehow discredits American Tuna's evidence on the issue of standing. This disjointed argument is not supported by logic or authority, and the Court should reject it.[2/]

Clearly, a party is not required to file a Rule 12 motion in order to raise an issue at the time of class certification or summary judgment. Plaintiff additionally fails to explain how American Tuna could have prevailed on a motion to dismiss the New York GBL claims on statute of limitations grounds without presenting materials outside the pleadings to explain when its labels were sold. This would not have been possible on a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)[.]").

Plaintiff's criticism of American Tuna for not providing a declaration of Whole Foods regarding the timing of American Tuna's sales is also misplaced. American Tuna was in the same or a better position to explain the history of its own labels and the times when they were printed, packed, and sold than anyone at Whole Foods. If Plaintiff suspected Whole Foods was in possession of some sort of contradictory evidence, Plaintiff had months of discovery to depose Whole Foods's witnesses and obtain their documents. Tellingly, he did not do so.

---

[2/] Part of the problem is that Plaintiff confuses two different issues. The fact that the 2016 Label and 2017 Label were not sold within the GBL limitations period (one of many issues argued by American Tuna at class certification) and the fact that Glass never purchased either of the labels (the basis of the Court's ruling) are not the same thing.

1    Plaintiff also makes a host of unsupported and absurd statements about the timing of American Tuna labels. He contends the "only objective evidence provided by any party regarding when 'Caught and Canned in America" and "Caught and Canned in the USA" labels were available in the marketplace are pictures of the cans in the [SAC]" showing the "labels for sale as late as November 2, 2021[.]" (OSC Response Brief, 4-5.) But pictures in the SAC are not evidence, and Plaintiff cannot rely on them at class certification. *Ellis v. Costco Wholsesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011). Moreover, American Tuna thoroughly explained that the exemplar labels Plaintiff offered in support of the Motion for Class Certification, which were the same as those depicted in the SAC, were not available at Whole Foods in 2022 and 2023, when Glass was purchasing the brand. (Eames Decl., ¶¶ 90-98.)

Plaintiff also cites a passage from American Tuna's opposition to the Motion for Class Certification, suggesting that the 2016 Label and 2017 Label were still available through American Tuna's Amazon.com storefront as late as November 2021. (OSC Response Brief, 6:3-4.) Plaintiff is wrong again. The language Plaintiff quotes comes from a paragraph in which American Tuna describes its website and Amazon.com storefront as two places where it sells products in general, in addition to Whole Foods and to walk in customers. (Memorandum of Points and Authorities in Support of Defendant American Tuna, Inc's Opposition to Plaintiff's Motion for Class Certification, 8:23-24 [ECF No. 109].) American Tuna never said the 2016 Label and 2017 Label were being sold at the Amazon storefront in November 2021. And even if it had, Glass never bought products from that outlet anyway—they were only made at Whole Foods. (Glass Depo., 64:23-66:3.)

**D.    There is No Evidence Plaintiff Saw the "Made in America" and "100% American Made" Labels.**

Plaintiff also contends that "there are questions as to whether Plaintiff saw the 'American Made' and '100% American Made' labels upon which he also alleges he relied (SAC at ¶ 25)." But Plaintiff should well know that such "questions" cannot

905213

save him at this point. Plaintiff presented no evidence, either in the form of a declaration or his deposition testimony, to the effect that he ever saw or relied on any label that said "American Made."

Since he cannot get around this obvious shortcoming, Plaintiff resorts to confusion, contending that American Tuna "concedes" that one label that said "American Made" was available until May 2023. However, the version of the label that Plaintiff refers to, the 2019 V.2 Label, only appeared on the 3.5 ounce cans of the salt and no salt cans which were sold from approximately June 2019 to May 2023. (Eames Decl., ¶¶ 60, 80-83.) As explained in the declaration of Sarah Eames, the 3.5 ounce can is one of the "Specialty Varieties" that was only sold online and not at Whole Foods. (Eames Decl., ¶ 16.)[3/] Logically, since Glass only purchased the product at Whole Foods, he could not have purchased this particular label.

### 4. CONCLUSION

Plaintiff cannot demonstrate Article III standing because he did not purchase any version of American Tuna's products that contained statements he alleged were misleading. Instead, he admitted the labels he did purchase, "appear to be true." (Glass Depo. at 128:15.) As such, Glass lacks Article III standing to pursue this case on behalf of himself or anyone else. The Court should dismiss the action and enter judgment in American Tuna's favor.

Respectfully submitted,

KLEIN & WILSON LLP

Dated: February 7, 2024

By: /s/ William P. Keith
William P. Keith
Attorneys for American Tuna, Inc.

---

[3/] The declaration states: "American Tuna also sells specialty flavors of its products in Smoked with Olive Oil, Jalapeño, Garlic, and 3.5 ounce cans of Salt and No Salt (the "Specialty Varieties"). During the Limitations Period, American Tuna has only sold these Specialty Varieties directly to consumers, through American Tuna's website and Amazon.com storefront." (Eames Decl., ¶ 16.)